*E-FILED - 3/3/11*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARVELLO L. TUFONO,<br><br>    Plaintiff,<br><br> vs.<br><br>CORRECTIONAL SERGEANT M. VALENZUELA, CORRECTIONAL OFFICER V. FRANCO, AND CORRECTIONAL OFFICER D. GALINDO,<br><br>    Defendants. | No. C 09-4136 RMW (PR)<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO PRO SE PRISONER SETTLEMENT PROGRAM |

      Plaintiff, a California prisoner proceeding pro se, filed the instant civil rights action pursuant to 42 U.S.C. § 1983 against prison officials at Silicon Valley State Prison ("SVSP"). Defendants have filed a motion for summary judgment, arguing that there is no genuine issue of material fact, and that they are entitled to judgment as a matter of law. Plaintiff has filed an opposition. Defendants have filed a reply, and plaintiff has filed a response to the reply. Having carefully considered the papers submitted, defendants' motion for summary judgment is DENIED.

///

///

Order Denying Defendants' Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.09\Tufono136mfsj.wpd

# BACKGROUND[1]

On August 3, 2005, plaintiff was designated as a Protective Custody ("PC") / Sensitive Needs Yard ("SNY") inmate. (Decl. plaintiff at ¶ 3.) In general, SNY inmates are designated as such because their presence within General Population ("GP") raises concerns for their safety. (Decl. Valenzuela at ¶ 6.) As of September 16, 2008, plaintiff's custody classification remained SNY, but he also had a designation of an Enhanced Outpatient Program ("EOP")[2] mental health level of care. (Opp. at 8.) According to SVSP operational procedures, double-cell housing assignments for SNY-EOP inmates were limited to placement only with other SNY-EOP inmates. (Opp. Ex. A ("CDCR SVSP Operational Procedure 42") at 7.) When the Initial Classification Committee "refers an inmate for Sensitive Needs Yard Placement, the inmate must not be re-housed with a non-SNY inmate. . . SNY inmates may be celled with SNY inmates only. . . . SNY-EOP inmates may be celled with SNY-EOP only." (Id. at 7,15.) Prison policy allows for housing inmates together in a double cell, provided that the inmates are compatible. (Decl. Valenzuela at ¶ 4.) Inmates must have the same custody designation in order to be compatible cellmates. (Defs.' Reply at 7.)

On September 16, 2008, Correctional Officer Franco told plaintiff that Franco and Sergeant M. Valenzuela read plaintiff's paperwork, along with Inmate Gasaway's paperwork, and determined that the two inmates would be compatible cellmates because, among other things, they had the same custody classification. (Complaint at 3; Opp at 9.) Franco told plaintiff that if he did not comply, plaintiff would receive a serious rules violation report. (Complaint at 3.) According to California regulations, inmates must accept housing assignments to double-cell (absent legitimate reasons) or face disciplinary action. (MSJ at ¶ 5.) After

---

[1] The following facts are taken in the light most favorable to plaintiff.

[2] The EOP level of care is the most intensive level of outpatient mental health care within the Mental Health Services Delivery System in the California Department of Corrections and Rehabilitation. (Decl. Valenzuela at ¶ 3.) "The program has structured activities for mentally ill inmate-patients who, because of their illness, experience adjustment difficulties in a general prison population setting but are not so impaired as to require 24-hour inpatient care." (Id.)

Order Denying Defendants' Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.09\Tufono136mfsj.wpd

2

1  Valenzuela and Franco told plaintiff that his paperwork and Gasaway's paperwork indicated they
2  would be compatible cellmates, plaintiff believed that Gasaway must have also been classified as
3  an SNY inmate.  (Opp. at 2.)  Plaintiff and Gasaway signed compatibility chronos and became
4  cellmates the same day.  (Decl. Valenzuela at ¶ 2.)

5  Three days later, on September 19, 2008, Valenzuela instructed Correctional Officer
6  Galindo to move Gasaway to another cell.  (Id. at ¶ 7.)  Valenzuela does not recall the reason for
7  the move.  (Id.)  Although Galindo states that he did not "discuss[]" with Gasaway the reason for
8  the move (Decl. Galindo at ¶ 2), plaintiff and Inmate Garcia overheard Gasaway ask Galindo
9  why he was being moved (Complaint at 4, Decl. Garcia at 2).  Plaintiff and Garcia heard Galindo
10 yell from the lower tier, up to plaintiff's and Gasaway's cell on the upper tier, that the reason
11 Gasaway was being moved was, "Because [plaintiff] is an SNY inmate with an EOP mental
12 health level of care and your (sic) a GP inmate with an EOP mental health level of care, and you
13 guys are not compatible."  (Id.; Opp. at 7.)  As soon as Galindo left, Garcia heard a loud
14 commotion coming from plaintiff's cell and could heard Gasaway yelling, "You PC bitch, I'm
15 going to kill you."  (Decl. Garcia at 2.)

16 Franco, Valenzuela, and Galindo soon responded to a "man down" alarm in plaintiff's
17 cell.  (Decl. Valenzuela at ¶ 7.)  When they arrived, they found plaintiff unconscious on the
18 floor, and Gasaway admitted that he had "knocked [plaintiff] out."  (Id.)  Plaintiff suffered
19 "extensive injury to his head" which included abrasions, bleeding, pain, and a swollen area
20 around his forehead.  (Decl. Young, Ex. C at AGO-09.)  Plaintiff was immediately taken to the
21 hospital for medical treatment, and returned to the prison the following morning.  (Decl.
22 Valenzuela at ¶ 7.)  Gasaway told the investigative employee that he "was hearing voices that []
23 were telling [him he] need[ed] to get out of this cell and [he] need[ed] to fight."  (Decl. Young,
24 Ex. C at AGO-5.)  At Gasaway's disciplinary hearing, he entered a plea of not guilty and stated,
25 "My cellie was EOP but now he is GP, and we are not supposed to be housed together."  (Id. at
26 AGO-07.)  Gasaway was found guilty of battery on an inmate with serious bodily injury.  (Id. at
27 AGO-06.)

28

Order Denying Defendants' Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.09\Tufono136mfsj.wpd

1  After the attack, plaintiff told Valenzuela that he was SNY-EOP and Gasaway was GP-
2 EOP. (Decl. Valenzuela at ¶ 8.) Valenzuela reviewed both inmates' files again, and confirmed
3 that they were indeed compatible cellmates. (Id.) Valenzuela came to that conclusion by
4 "looking at their files to ensure they were not documented enemies, among other inquiries
5 relating to their compatibility." (Id. at ¶ 9.)

## ANALYSIS

I.  Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." Liberty Lobby, Inc., 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The

1  nonmoving party has the burden of identifying, with reasonable particularity, the evidence that
2  precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the
3  moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.
4       At the summary judgment stage, the court must view the evidence in the light most
5  favorable to the nonmoving party: if evidence produced by the moving party conflicts with
6  evidence produced by the nonmoving party, the judge must assume the truth of the evidence set
7  forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152,
8  1158 (9th Cir. 1999).
9  II.    Legal Claims and Analysis
10      Plaintiff alleges that defendants Franco and Valenzuela knew that Gasaway did not have
11 the same custody classification as plaintiff, yet misled both plaintiff and Gasaway to believe
12 otherwise, and assured them that they would be compatible cellmates. Plaintiff further alleges
13 that defendant Galindo knew that plaintiff and Gasaway were incompatible cellmates, and his
14 action of announcing their incompatibility prior to moving one of the cellmates out resulted in
15 plaintiff's serious injuries. Plaintiff claims that the defendants were deliberately indifferent to
16 his safety needs, and failed to protect him, in violation of the Eighth Amendment.
17      Defendants move for summary judgment, arguing that there are no genuine issues of
18 material fact and, thus, they are entitled to summary judgment as a matter of law. Defendants
19 state that Valenzuela and Galindo had no reason to believe that plaintiff was at an excessive risk
20 of serious harm because Valenzuela verified that they were compatible to be celled together, and
21 plaintiff signed the compatibility chrono agreeing to be cellmates with Gasaway. Moreover,
22 Galindo states that while he informed Gasaway that he would be moving to a different cell, he
23 did not discuss the reasons for the move. In fact, Valenzuela does not recall why he ordered the
24 move.
25      The Eighth Amendment requires that prison officials take reasonable measures to
26 guarantee the safety of prisoners. Farmer v. Brennan, 511 U.S. 825, 832 (1994). In particular,
27 prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Id.
28 at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials

to protect prisoners from attacks by fellow prisoners or from dangerous conditions at the prison violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to prisoner safety. Farmer, 511 U.S. at 834; Hearns, 413 F.3d at 1040-41. For a prison official to be held liable under the Eighth Amendment, the official "must know[] of and disregard[] an excessive risk to prisoner health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; see Gibson v. County of Washoe, Nev, 290 F.3d 1175, 1187-88 (9th Cir. 2002).

The party claiming an Eighth Amendment violation "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842 (citation omitted). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

The Supreme Court further explained that the "obviousness of a risk" is not conclusive, and a prison official may demonstrate that the obvious escaped him. Farmer, 511 U.S. at 843, n.8 (citation omitted). But a prison official "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist . . . ." Id. Also, a prison official may not "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." Id. at 844. The ultimate test is whether the prison official acted reasonably in light of his knowledge; if he did, he is not liable under the Eighth Amendment even if the prisoner is harmed. Id.

Defendants do not dispute that "the deprivation alleged is, objectively, sufficiently serious," Farmer, 511 U.S. at 834, and thus, the only issue here is whether defendants were

subjectively, deliberately indifferent to plaintiff's safety needs. Taking the evidence in the complaint as true, and drawing all inferences therefrom in plaintiff's favor, there remain genuine issues of material fact that preclude summary judgment.

Plaintiff initially believed that he and Gasaway had the same custody classification because Valenzuela and Franco told him that they were. (Complaint at 3; Opp at 9.) Moreover, as an SNY-EOP inmate, plaintiff was not to be celled with another inmate who was not SNY-EOP. Three days after Gasaway and plaintiff moved in together, Galindo announced to Gasaway and plaintiff that Gasaway was to move to a different cell because Gasaway and plaintiff, in fact, were not compatible as cellmates because plaintiff was SNY-EOP and Gasaway was GP-EOP. (Complaint at 4, Decl. Garcia at 2, Opp. at 7.) Indeed, the evidence demonstrates that the operational procedures at SVSP require that SNY-EOP inmates were only allowed to be housed with other SNY-EOP inmates, and SNY inmates were designated as such because they generally could not be housed in GP for their own safety. Valenzuela declared that he reviewed both Gasaway's and plaintiff's paperwork, including their CDC 114-A-1 forms "among other documents," and determined that the inmates would be compatible as cellmates. (Decl. Valenzuela at ¶ 2.)

The court notes that defendants do not directly dispute plaintiff's allegations that he and Gasaway had different custody classifications. Indeed, defendants do not state what Gasaway's and plaintiff's custody classifications actually were, or whether Gasaway was, in fact, designated as SNY-EOP. Nor do they dispute that plaintiff was designated as SNY-EOP at the time they directed him to double-cell with Gasaway. Notably, they have not provided any of the paperwork that Valenzuela and Franco reviewed from plaintiff's or Gasaway's files to determine compatibility, nor have they discussed any details of the contents of that paperwork, except to say that, generally, it was confirmed that plaintiff and Gasaway were not documented enemies. Defendants did submit a CDCR Form 128G document which indicates that, on September 4, 2008, less than two weeks prior to the double-cell assignment at issue here, prison officials concluded that Gasaway should remain at SVSP in the Administrative Segregation Unit ("ASU") until completion of his disciplinary proceeding, which was to commence as a result of an August

2008 accusation that Gasaway committed battery on a peace officer. (Decl. Young, Ex. B at AGO-02.) Thus, at least this document indicates that Gasaway was at one time designated as ASU. The document further states that Gasaway was to "[c]ontinue WG/PG at D1D effective 10/16/2007. Continue ASU yard W/A. Continue double cell. Psych is EOP." (Id.) However, the pleadings themselves do not discuss nor refer to this document, and the court cannot ascertain whether this document is the most up-to-date reflection on Gasaway's custody classification as of the date he was determined to be compatible with plaintiff, nor whether this document was one which Valenzuela and Franco relied upon to determine his compatibility with plaintiff.

In moving for summary judgment, defendants have the initial burden of demonstrating the absence of a genuine issue of material fact. Viewing the facts in the light most favorable to plaintiff, as the court must, Valenzuela and Franco reviewed both Gasaway's and plaintiff's paperwork, and knew that plaintiff was SNY-EOP while Gasaway was not. From this, a reasonable inference can be drawn that Valenzuela and Franco acted to double-cell plaintiff and Gasaway, despite SVSP's operational policy that SNY inmates can only be double-celled with other SNY inmates due to safety precautions for the benefit of SNY inmates.

The court is unpersuaded by defendants' argument that they could not have known about an excessive risk to plaintiff because plaintiff signed the compatability chrono and plaintiff lived with Gasaway without incident for three days. Defendants do not dispute that they assured plaintiff that he and Gasaway had the same custody classification. Defendants also do not dispute that plaintiff was SNY-EOP while Gasaway was not. Based on the prison policy that SNY-EOP inmates can only be house with other SNY-EOP inmates, and the general knowledge that SNY inmates are to be housed separately from GP inmates for their own safety, it appears that this policy was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." See Farmer, 511 U.S. at 842-43. "[S]uch evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." See id.

1  Defendants' reliance on Ruiz v. Walker, 2008 WL 512710 (N.D. Cal. Feb. 25, 2008) is
2  also misplaced. In Ruiz, the pertinent issue was also the mental state of the defendants in a
3  failure-to-protect case when defendants placed a known enemy into a cell with the plaintiff.
4  There, plaintiff and another inmate by the name of Guillen had previously gotten into an
5  altercation that resulted in injuries to Guillen. After that incident, the inmates should have been
6  declared enemies and should not have been permitted to be housed together. However, three
7  months later, Ruiz and Guillen were assigned to be celled together, no defendant heard either
8  inmate object to the placement, and, after the officers left the inmates alone, plaintiff attacked
9  Guillen. The district court relied upon evidence submitted by the defendants, indicating that
10  although paperwork should have been included in both inmates' files that the two were known
11  enemies, no defendant ever saw such paperwork. Id. at *6. In Ruiz, the defendants did not
12  observe any notation in the inmates' files that the two inmates were known enemies and, thus,
13  incompatible. In contrast here, plaintiff and Gasaway were not known enemies, but, plaintiff
14  asserts that they were not of the same custody classification. Although defendants here declare
15  that the inmates' paperwork indicated they were compatible, the only evidence submitted beyond
16  Valenzuela's declaration to contradict plaintiff's assertion appears to support plaintiff's claim
17  that Gasaway was not designated as an SNY-EOP at the time defendants double-celled them
18  together. (Decl. Young, Ex. B at AGO-02.) Defendants do not argue that Gasaway and plaintiff,
19  in fact, had the same custody classification. Defendants also do not argue that although plaintiff
20  and Gasaway had different custody classifications, they overlooked it. Thus, the court concludes
21  that there is a genuine issue of material fact that precludes summary judgment as to Valenzuela
22  and Franco.
23  As to Galindo, viewing the facts in the light most favorable to plaintiff, there is a genuine
24  issue of a material fact as to whether he exhibited deliberate indifference in informing Gasaway
25  that he must move cells because he was not compatible with plaintiff. Inmate Garcia confirmed
26  plaintiff's statements and stated that as soon as Galindo exited the cell area, Garcia heard a
27  commotion in plaintiff's cell, and heard Gasaway yelling, "You PC bitch, I'm going to kill you."
28  Because the prison has a policy of not housing SNY inmates with anyone other than another

1  SNY inmate for "safety concerns," there is a reasonable inference that Galindo, in informing
2  Gasaway that plaintiff was incompatible with him because he was SNY, acted with deliberate
3  indifference.  See Farmer, 511 U.S. at 842-43.

4      Having concluded that genuine issues of material facts exist as to whether defendants
5  were deliberately indifferent to plaintiff's safety, in violation of the Eighth Amendment, the
6  court next addresses whether he is entitled to qualified immunity.  A court considering a claim of
7  qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual
8  constitutional right and whether such right was clearly established such that it would be clear to
9  a reasonable officer that his conduct was unlawful in the situation he confronted.  See Pearson v.
10 Callahan, 129 S. Ct. 808, 818 (2009).

11     Although the facts at trial might show otherwise, at this stage, the unresolved factual
12 allegations as viewed in the light most favorable to plaintiff show a violation of his right to be
13 free from the hands of violence from other prisoners.  See Farmer, 511 U.S. at 833.  Qualified
14 immunity is not appropriate at this stage because it was clearly established at the time of the
15 alleged violations that reasonable officers in Valenzuela and Franco's positions would have
16 known that double-celling plaintiff, an SNY-EOP prisoner, with Gasaway, a non-SNY prisoner,
17 exposed plaintiff to a substantial risk of serious harm.  In addition, knowing SVSP's policies
18 regarding the safety concerns of SNY inmates, a reasonable officer would have known that
19 announcing to Gasaway that he was incompatible with plaintiff, who was an SNY-EOP, exposed
20 plaintiff to a substantial risk of serious harm.  "If there are genuine issues of material fact in
21 issue relating to the historical facts of what the official knew or what he did, it is clear that these
22 are questions of fact for the jury to determine."  Sinaloa Lake Owners Ass'n v. City of Simi
23 Valley, 70 F.3d 1095, 1099 (9th Cir. 1995).  Because the court cannot say as a matter of law that
24 it was objectively reasonable for defendants to believe that the facts as they stand on summary
25 judgment showed no violation of a clearly established right, these issues remains to be resolved
26 in further proceedings, and summary judgment on defendants' request for qualified immunity is
27 DENIED.

28

Order Denying Defendants' Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.09\Tufono136mfsj.wpd

III. <u>Referral to Pro Se Prisoner Settlement Program</u>

Prior to setting this matter for trial and appointing pro bono counsel to represent plaintiff for that purpose, the court finds good cause to refer this matter to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claims set forth above. The proceedings will consist of one or more conferences as determined by Judge Vadas. The conferences shall be conducted with defendants, or their representatives, attending by videoconferencing if they so choose. If these settlement proceedings do not resolve this matter, the court will then set this matter for trial and consider a motion from plaintiff for appointment of counsel.

**CONCLUSION**

1. Defendants' motion for summary judgment is DENIED. Plaintiff has set forth a genuine triable issue as to whether defendants were deliberately indifferent to plaintiff's safety.

2. The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the remaining claims in this action, as described above. The proceedings shall take place within **one-hundred twenty (120) days** of the filing date of this order. Judge Vadas shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within **ten (10) days** after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings. If these settlement proceedings to do not resolve this matter, plaintiff can file a renewed motion for appointment of counsel and the court will then set this matter for trial.

3. The clerk of the court shall mail a copy of the court file, including a copy of this order, to Judge Vadas in Eureka, California.

4. The instant case is STAYED pending the settlement conference proceedings.

IT IS SO ORDERED.

DATED: __3/2/11_____        _Ronald M. Whyte_
                                  RONALD M. WHYTE
                                  United States District Judge